UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| PRIME TRADING COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 08 C 154 |
| v. ) | |
| ) | Judge Kennelly |
| R.J. O'BRIEN & ASSOCIATES, INC., an ) | |
| Illinois corporation, ) | Magistrate Judge Ashman |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Defendant, R.J. O'Brien & Associates, LLC ("RJO"), incorrectly sued as R.J. O'Brien & Associates, Inc., submits this Reply in Support of its Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted as follows:

**I.   THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Plaintiff's Brief in Opposition (hereafter, "Opposition Brief") confirms that the basis for entitlement to relief on each of its claims is its bare assertion that it would not have been liable for restitution to its 90 farmer customers if RJO had executed certain trades for the customers on April 29, 2003, because, if the trades had been executed, the farmers would have been made whole (and thus, not suffered any losses) when the market allegedly rebounded over the next 10 days (hereafter, the "Claim for Relief"). (*See*, *e.g*., Pl.'s Opp'n at 10.)  Plaintiff's convoluted Claim for Relief is insufficient for two main reasons.  *First*, there is no connection between RJO's alleged refusal to execute trades and Plaintiff's payment of restitution pursuant to the December 2007 Consent Order ("Consent Order") that settled the Commodity Futures Trading Commission ("CFTC") action against Plaintiff and others.  The Consent Order required Plaintiff

and its codefendants to pay restitution due to *their* participation in conduct that violated federal law such as "effect[ing] transactions in commodity interests for the accounts of customers without obtaining . . . specific authorization from the customers. . . . " (Am. Compl., Ex. B., ¶ 32); *see also id*. at 10 ("Based upon and in connection with the foregoing conduct."). Because the Consent Order does not even mention RJO or its alleged refusal to effect trades in April 2003, RJO's actions could not possibly have formed the basis for Plaintiff's alleged payment of restitution pursuant to the Consent Order. RJO's actions likewise could not have caused any restitution that Plaintiff allegedly paid the farmers outside of the Consent Order. In fact, Plaintiff *admits* that it was liable to the farmer customers in restitution for its wrongdoings. (Am. Compl. ¶ 73 ("payments made by Plaintiff were in excess of [its] pro rata share of the common liability of Plaintiff and RJO.").)

*Second*, the purported gains to the farmers from an allegedly ensuing upward market movement are too speculative to be legally cognizable. In *Rogillio v. Merrill Lynch, Pierce, Fenner & Smith*, 448 So. 2d 1340, 1346 (La. Ct. App. 1984), a plaintiff investor claimed that he lost over $300,000 in profits because the defendant broker liquidated his positions in eight gold futures contracts. The court held that the plaintiff's claim "was correctly dismissed . . . as too speculative[,]" recognizing that the plaintiff's alleged lost profits were improperly "based upon the assumption that [plainitff], if he had been given the opportunity to keep all eight contracts, would have held them until their delivery date." *Id.* The Seventh Circuit held that lost profits were too speculative under similar circumstances. *See Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 865 (7th Cir. 1995) ("*Sullivan*"). In *Sullivan*, the plaintiff investors alleged that they would have sold stock at a profit if the defendant market maker had not been short selling the same stock. *Id.* at 865. The court found that the lost profits were too speculative to state a

claim. *Id*. ("It is entirely speculative that but for [the defendant's] short selling, the plaintiffs would have sold at a profit. . . ."). The court reasoned that it was inappropriate to assume that factors other than the defendant's short sales would not have "thwart[ed] any profit by these plaintiffs." *Id.*

Plaintiff's allegation in its Claim for Relief is also too speculative. The allegation *assumes*, in hindsight, that after April 29, 2003, things would have categorically turned out fine for Plaintiff and its farmer customers. For instance, the allegation assumes that losses would not have continued for one or more days, that margin calls would not have risen and that RJO, or one or more of the farmers, would not have chosen to close the positions out on April 30, May 2, or any of the other 10 days. *Rogillio* and *Sullivan* teach that a claim for lost profits based on such assumptions is far too speculative to support a legally sufficient claim. Similarly, Plaintiff has not alleged a proper claim based on a hindsight view of a market rally. *Sullivan*, 47 F.3d at 865; *Rogillio*, 448 So. 2d at 1346. Plaintiff's Claim for Relief is a fundamental flaw in each of its claims and thus, RJO respectfully requests that the Court dismiss the deficient claims.

Plaintiff's claims should also be dismissed because, for each claim, Plaintiff has failed to provide "more than labels and conclusions" to support its "entitlement to relief." *Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)). Instead, it improperly offers a "formulaic recitation of [certain] elements of [its various] cause[s] of action. . . ." *Id*. In addition, Plaintiff often attempts to give substance to the conclusory allegations in its Amended Complaint by inserting new allegations into its Opposition Brief. For instance, the only allegation in the Amended Complaint establishing Plaintiff's purported status as a third-party beneficiary is the bare assertion that "Plaintiff was a third-party beneficiary to the Security Agreement" between RJO,

Sherman County Bank (the "Bank") and the farmer customers. (Pl.'s Am. Compl. ¶ 51.) Presumably realizing the insufficiency of this allegation, Plaintiff attempts to make the claim more robust in its Opposition Brief by arguing for the first time that it is a third-party beneficiary "[i]n light of [its] position as a guaranteed broker of RJO . . . . and the language in [section 4(b) of] the Security Agreements regarding RJO's obligation to third parties. . . ." (Pl.'s Opp'n at 5.) This is improper, and the Court should disregard the unsupported factual allegations. *Anderson v. State of Ill. Dep't of Human Servs.*, No. 05 C 3859, 2005 WL 2465849, at *1 (N.D. Ill. Oct. 5, 2005) (citing *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005))( "When ruling on a motion to dismiss, the court considers only the allegations in the complaint and its exhibits."). However, as discussed below, Plaintiff's breach of contract claim is insufficient even accepting the new allegations.

RJO will now address the arguments offered by Plaintiff in its Opposition Brief.

### A. Plaintiff Has Not Stated a Claim for Breach of Contract

As shown in RJO's Initial Brief (at 3-9), Plaintiff does not, and cannot, properly allege a claim for breach of contract under any of its three alternative theories, that RJO breached: (1) an express provision in the Security Agreements; (2) an oral modification to the Security Agreements; or (3) a separate oral agreement between it and Plaintiff. Thus, Plaintiff's breach of contract claim should be dismissed.

#### 1. Plaintiff does not properly allege third-party beneficiary status.

Plaintiff fails to properly allege that it is an intended third-party beneficiary of the Security Agreements under the standard set forth in *155 Harbor Drive Condo. Ass'n v. Harbor Point Inc.*, 568 N.E.2d 365, 375 (Ill. App. Ct. 1991), a case on which it surprisingly relies. As mentioned above, Plaintiff avers for the first time in its Opposition Brief that the final sentence

of section 4(b) of the Security Agreements[1] shows that it is a third-party beneficiary. (Pl.'s Opp'n at 4-5.) However, as explained below, there is no language in section 4(b) by which RJO even remotely manifested an intention to make Plaintiff a third-party beneficiary of the Security Agreements. *Id*. at 375 (quoting *Ball Corp. v. Bohlin Building Corp*., 543 N.E.2d 106, 107-08 (Ill. App. Ct. 1989)) (explaining that there must be language in an express provision of a contract "which constitutes a virtual express declaration" that the contract was intended to benefit a third party).

The sentence of section 4(b) that Plaintiff identifies describes RJO's duties in the event that the Bank "elects" to prevent a farmer from transacting in his or her account and orders are being executed for that account pursuant to a "give up" or similar agreement. *Id.* ¶ 4(b). A "give-up" is a triparty agreement between "[the farmer], [RJO] and [a] third party. . . ." *Id*. Generally, the "third-party" to a give-up agreement is an executing broker (or give-in broker) who, "pursuant to a customer's instructions, gives up an executed order for clearance to a clearing member other than the executing broker's primary clearing member (or qualifying member) [*i.e*., RJO]." (Federal Reserve Bank, Bank Holding Company Supervision Manual, at 1014 n.3.)[2] Plaintiff alleges that it is a "guaranteed broker," not an "executing broker" so section 4(b) does not even refer to, or identify, it. *See 155 Harbor Drive Condo. Ass'n v.* at 375 (quoting *Wheeling Trust & Savings Bank v. Tremco, Inc*., 505 N.E.2d 1045, 1048 (Ill. App. Ct. 1987) ("an

---

[1] The Security Agreements relate to the control of a farmer's account (between him or her and the Bank) and have nothing to do with Plaintiff. (Am. Compl., Ex. C, at 1) ("the [farmer], the [Bank] and [RJO] enter into an Account Control Agreement.").

[2] The Manual is available at http://www.federalreserve.gov/BoardDocs/SupManual/bhc/200801/bhc0108.pdf. Give-up agreements "are used primarily to allow institutional customers to select a broker who has superior expertise and execution skills with respect to specific contracts or types of orders, while maintaining their accounts and positions with a clearing firm in which they have financial confidence." (FRB, Bank Holding Company Supervision Manual, at 1014 n.3.)

5

express provision in the contract [must] identify[] the third-party beneficiary."). The Court is not required to blindly accept Plaintiff's allegations as to the effect of this language. *Heartland Fin. USA, Inc. v. Fin. Insts. Capital Appreciation Partners I*, No. 02 CV 3982, 2002 WL 31819008, at * 4 (N.D. Ill. Dec. 12, 2002) (quoting Wright & Miller, 5A Fed. Prac. & Proc. Civ.3d § 1327, at 766-67) ("When a disparity exists between the written instruments annexed to the pleadings and the allegations in the pleadings, the written instrument will control.").

Put simply, Plaintiff cannot properly allege that the Security Agreement was entered into for its direct benefit, and it cannot allege that the parties to the Security Agreement manifested an intent to confer a direct benefit upon it. *Id.* at 374 (quoting *Ball Corp.*, 543 N.E.2d at 107-08) ("A third party is a direct beneficiary when the contracting parties have manifested an intent to confer a benefit upon the third party."). Because Plaintiff cannot allege third-party beneficiary status, it also cannot state a claim for breach of the Security Agreement.

2. <u>Plaintiff fails to allege a breach of the Security Agreement</u>.

RJO contended in its Initial Brief (at 5) that Plaintiff failed to allege sufficient detail as to the provisions of the Security Agreement that were allegedly breached. Plaintiff now claims for the first time in its Opposition Brief that, under sections 4(a) and (d) of the Security Agreement, RJO was obligated "to comply with orders placed by . . . the Bank on April 29, 2003. . . ."[3] (Pl.'s Opp'n at 6.) This argument is baseless. First, because there is no allegation in the Amended Complaint on which to base this assertion the Court should disregard it. Additionally, the very language quoted in the Opposition Brief undercuts Plaintiff's contention.

---

[3] Plaintiff also states that RJO should have complied with its own request to place new orders in the farmer's accounts (as opposed to requests from the farmers or the Bank). Plaintiff has not alleged that it is a party, or properly alleged that it is a third-party beneficiary, to the Security Agreements, and there is simply no justification for Plaintiff's contention. Not to mention, this is not alleged in the Amended Complaint.

6

Section 4(d) refers specifically to an "Entitlement Order," meaning a notification to RJO "directing the transfer, liquidation, or redemption of the Trading Account Property. . . ." (Am. Compl., Ex. C, ¶ 4(a).) A request from the Bank to place *new orders* in the farmer's accounts does not fall within this definition and, therefore, Section 4(d) does not apply under such circumstances. And, in fact, the Security Agreements do not contain a provision concerning RJO's supposed duty to accept new orders from the Bank.[4] The Court need not accept this implausible (and novel) allegation. *See E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) ("allegations must plausibly suggest that the plaintiff has a right to relief. . . ." ); *see also N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."). In short, Plaintiff has not properly alleged a provision of the Security Agreement that was supposedly breached, and, accordingly, the Court should dismiss its breach of contract claim.[5]

        3.        <u>Plaintiff does not sufficiently allege an oral agreement (or modification)</u>.

Plaintiff contends that its oral agreement allegation is "sufficiently definite and certain," because it agreed with RJO that "RJO would continue to accept orders to roll forward certain margin positions despite outstanding margin calls. . . ." (Pl.'s Opp'n at 5.) But RJO's alleged promise, on its own, is not "sufficiently definite" to establish that an enforceable agreement exists. *See Video Cassette Games, Inc. v. Sanwa business Credit Corp.*, No. 89 C 4730, 1990 WL 106567, at *4 (N.D. Ill. July 12, 1990) ("A valid cause of action for breach of an oral

---

[4] Furthermore, Section 4(b) of the Security Agreements allows RJO to not to accept orders, even from the account owner, if it is not "willing" to do so. (Am. Compl., Ex. B, ¶ 4(b).)

[5] Plaintiff also alleges for the first time in its Opposition Brief that RJO violated section 4(b) of the Commodity Exchange Act ("CEA") by wrongfully liquidating the farmers' positions. This allegation appears nowhere in the Amended Complaint, and it has nothing to do with Plaintiff's breach of contract claim. Accordingly, the Court should disregard Plaintiff's new allegation.

agreement must show that the alleged agreement contains sufficient definitiveness to be enforceable."). How many trades did RJO agree to accept? How long was RJO supposed to accept the trades? How large could the margin calls become before RJO could stop accepting trades? How long did RJO agree to wait to be paid its premium for the new positions? These are all essential terms to the phantom "agreement" that Plaintiff does not plead. Plaintiff's allegations clearly do not contain sufficient detail to support an oral agreement.

Further, Plaintiff has not pled adequate consideration. Plaintiff alleges in its Opposition Brief (not in its Amended Complaint) that there was adequate consideration for an agreement because it "continued to place trades with RJO and [it] refrained from obtaining the services of another commodity broker to place its orders." (Pl.'s Opp'n at 6.) As noted in RJO's Initial Brief (at 5-6), such conduct is deemed past consideration that cannot support a valid contract. Moreover, it is not "bargained-for consideration." "A performance . . . is bargained for if it is sought by the promisor [RJO] in exchange for his promise. . . ." *Hartbarger v. SCA Services, Inc.*, 558 N.E.2d 596, 604 (Ill. App. Ct. 1990) (quoting Restatement (Second) of Contracts § 71, at 172 (1981)). Plaintiff does not allege, nor can it, that RJO offered to continue to accept orders on the farmers' accounts in exchange for Plaintiff's promise to continue to place trades with RJO. To the contrary, Plaintiff alleges that it came to RJO and requested that RJO continue to accept orders in accordance with Plaintiff's trading strategy.[6] (*See* Am. Compl. ¶¶ 33, 37, 42, 44, 45.)

---

[6] As noted in RJO's Initial Brief (at 5-6), there is also no consideration for the purported modification. *Watkins v. GMAC Financial Servs*, 785 N.E.2d 40, 44 (Ill. App. Ct. 2003) ("A contract modification must satisfy the same criteria required for a valid contract: offer, acceptance, and consideration.").

Finally, Plaintiff recognizes, as did RJO (at 6), that in order to properly plead a breach of the implied covenant, it must first allege that RJO "had wide discretion in contract performance." (Pl.'s Opp'n at 9.) Yet, Plaintiff does not even attempt to identify an allegation in its Amended Complaint that addresses this essential element. Accordingly, Plaintiff's claim for breach of the implied covenant should be dismissed. *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir.2001) (recognizing that the "failure to oppose an argument permits an inference of acquiescence and acquiescence operates as a waiver." (internal quotations omitted)).

    4.    <u>Plaintiff fails to allege damages as a result of a breach</u>.

Plaintiff basically argues that its own unauthorized and fraudulent trading, which is the basis for the Consent Order of restitution, is irrelevant, because, if RJO had just placed additional trades, everything would have been fine.[7] As explained in detail above, *see supra* at pp. 1-3, Plaintiff's attempt to hold RJO responsible for its payment of restitution is groundless. Plaintiff also seeks attorneys' fees that it incurred in defending the CFTC action. (Am. Compl. ¶ 62.) Plaintiff alleges that the fees should be paid by RJO based a slender exception to the "American Rule" recognized in Illinois that a plaintiff may recover attorneys' fees "where the natural and proximate consequences of a wrongful act have been to involve the plaintiff in litigation with others. . . ." *Ritter v. Ritter*, 46 N.E.2d 41, 44 (Ill. 1943). There is nothing in the CFTC Complaint that even remotely suggests that the Commission brought the lawsuit against Plaintiff because of RJO's conduct. (*See* Am. Compl., Ex. A. ¶¶ 1-11.) Plaintiff has even admitted

---

[7] In making its argument, Plaintiff makes an illogical and strained analogy between medical malpractice and the present matter, stating that "the [f]armers were able to collect [restitution] against [Plaintiff] for aggravation of their injury caused by RJO. . . ." (Pl.'s Opp'n at 11.) Again, the farmers were able to collect restitution from Plaintiff based on its unauthorized trades. (Am. Compl., Ex. B., ¶¶ 25, 32-33.)

liability to the farmer customers. (Am. Compl. ¶ 73.) The Court should reject this implausible allegation. *See E.E.O.C.*, 496 F.3d at 777.[8]

For all of the reasons stated above and in RJO's Initial Brief, Plaintiff's breach of contract claim should be dismissed in its entirety.

### B.    Plaintiff is Not a Blameless Party

Implied indemnity under Illinois law is based on the "[t]he fundamental premise . . . that [a blameless party], although without fault in fact, has been subjected to liability *solely because of the legal relationship* with [the tortfeasor] . . . arising out of common or statutory law." *Diamond v. Gen. Tel. Co. of Illinois*, 569 N.E.2d 1263, 1268 (Ill. App. Ct. 1991) (quoting *Frazer v. A.F. Munsterman, Inc.*, 527 N.E.2d 1248, 1251-52 (Ill. 1998)) (emphasis added). "If, for example, an injured party can hold an employer or property owner vicariously liable for the negligence of an employee or other person, a right of indemnity would be implied in favor of the party liable in law [*i.e.*, the employer or property owner] who had not contributed to the injury." 21 Ill. Law and Prac. Indemnity § 13. Plaintiff does not allege that the CFTC action was based solely on some pretort, legal relationship with RJO. In fact, the action was based on its alleged violations of federal law. (Am. Compl., Ex. B, ¶¶ 33-36; *see also id*. ¶ 73 (Plaintiff admits liability).) Furthermore, there is no legal relationship between RJO and Plaintiff that would give rise to vicarious liability.[9] *See Diamond*, 569 N.E.2d at 1268 (pretort relationships potentially giving rise to implied indemnity are owner-lessee or lessor-lessee); *Van Slambrouck v. Economy*

---

[8] Plaintiff also has no right to attorneys' fees under all of its other claims.

[9] Plaintiff claims in its Opposition Brief that it alleged it "was vicariously liable for damages suffered by the [f]armers as a result of RJO[]. . . ." (Pl.'s Opp'n at 12.) This allegation is not made in Plaintiff's Amended Complaint, and, even so, this bare assertion is insufficient to establish some legal relationship between RJO and Plaintiff making RJO responsible for its actions.

*Baler Co.*, 475 N.E.2d 867, 872 (Ill. 1985) (noting also the relationships of employer-employee and master-servant).

Plaintiff does not, and cannot, properly plead the "fundamental premise" underlying implied indemnity, and, therefore, its claim should be dismissed.[10]

### C.    Plaintiff's Contribution Claim Should Fail

In Illinois, "the right to contribution arises due to the *compulsory* payment by a joint obligor. . . ." *In re Rivinius, Inc.*, 977 F.2d 1171, 1175-77 (7th Cir. 1992) (quoting *Ruggio v. Ditkowsky*, 498 N.E.2d 747, 750 (Ill. App. Ct. 1986)) (emphasis added). The only mandatory payment that Plaintiff alleges that it made was the $325,000 payment pursuant to the Consent Order. (Am. Compl. ¶ 12.) Accordingly, Plaintiff's claim to contribution on any other amounts should be summarily dismissed. *In re Rivinius, Inc.*, 977 F.2d 1171; *see also* C.J.S., Contribution § 4 ("the right to contribution arises when . . . one party is compelled to pay the entire sum."). The contribution claim in relation to the $325,000 restitution should be dismissed as well because (1) the CFTC action did not allege tort liability; and (2) Plaintiff seeks payment from RJO for the entire restitution payment, not a *pro rata* share.

*First*, the CFTC action did not allege tort liability; thus, Plaintiff cannot be a tortfeasor. *See* 740 ILCS 100/2(b) (right to contribution is available to tortfeasors). Plaintiff was

---

[10] Contractual indemnity exists where there is a legal relationship between parties and "one party's breach of contract causes a second party to breach a separate contract with a third party. . . ." *Zielinski v. Chris W. Knapp & Son*, 660 N.E.2d 1289, 1293 (Ill. App. Ct. 1995). RJO established above that Plaintiff has not alleged a legal relationship. In addition, Plaintiff cannot satisfy the second requirement for contractual indemnity. RJO's alleged refusal to accept trade orders occurred in April 2003, (*see*, *e.g*., Am. Compl. ¶ 45), and the violations of federal law giving rise to Plaintiff's payment of restitution under the Consent Order occurred in April 2002 and March 2003. (Am. Compl., Ex. A., ¶ 2.) Thus, RJO alleged refusal to accept trade could not have possibly caused Plaintiff's unauthorized trades.

investigated by the CFTC for violations of section 4b of the CEA[11] and ordered to pay restitution under the Consent Order. However, Plaintiff's "liability" was not based in "tort," but on its violations of federal law. (Am. Compl., Ex. B, ¶¶ 33-36.) Indeed, the payment of restitution was ordered by the district court under its equitable powers, *id.* ¶¶ 47-50, not as a judgment under tort law. Furthermore, contrary to Plaintiff's suggestion, (Pl.'s Opp'n at 12), *Goodman v. Hentz & Co.*, 265 F. Supp. 440, 446 (N. D. Ill. 1967), did not find otherwise (finding an implied right of action in the CEA and stating that "[v]iolation of *the standard of conduct* set out in section 6b of the [CEA] is a tort.") (emphasis added)).[12] *Second*, Plaintiff alleges that its restitution payments were in "excess of [its] pro rata share of the common liability of Plaintiff and RJO," (Am. Compl. ¶ 73), and yet it contends that RJO is responsible for *all* of the "restitution payments which Plaintiff paid to the [farmer] [c]ustomers. . . ." *Id.* at 18. This is the exact opposite of common liability and both parties being responsible for their *pro rata* share. *In re Rivinius, Inc.*, 977 F.2d at 1175-77. Under such circumstances, Plaintiff's contribution claim fails. *First Magnus Fin. Corp. v. Dobrowski*, 387 F. Supp. 2d 786, 793 (N.D. Ill. 2005) (disregarding an allegation in plaintiff's complaint where there was an "inconsistency in the pleadings. . . .").

    **D.**    **Plaintiff Is Not Innocent and Cannot Allege Subrogation**

"[S]ubrogation is allowed only to innocent parties." *Gable v. Reznick*, 538 N.E.2d 1325, 1327 (Ill. App. Ct. 1989); *see also Am. Nat'l Bank & Trust Co. v. Weyerhaeuser Co.*, 692 F.2d 455, 461 (7th Cir. 1982) (citing *Coffey v. ABC Liquor Stores, Inc.*, 142 N.E.2d 705 (Ill. App. Ct. 1957)) ("equity will permit only parties free from wrongdoing themselves to assert rights of

---

[11] The reference in Plaintiff's Opposition Brief to section 6b of the CEA is incorrect. Section 6b is the United States Code section number for CEA § 4b.

[12] In addition, in 1983—after *Goodman* but before the events at issue here—Congress amended the CEA to provide for explicit private rights of action that are "the exclusive remedies under [the CEA] available to any person who sustains loss as a result of any alleged violation of [the CEA]." CEA § 22(a)(2), 7 U.S.C. § 25(a)(2).

subrogation against third parties."). As explained throughout this Brief, Plaintiff is far from innocent. Plaintiff admits liability. (Am. Compl. ¶ 73.) Additionally, the Consent Order shows that Plaintiff, not RJO, was primarily liable for the restitution. *Id.*, Ex. B. ¶¶ 25, 32-34, 47. Thus, Plaintiff's subrogation claim should be dismissed.

### E. Plaintiff Does Not Allege a False Statement of Material Fact

Plaintiff's Opposition Brief shows that it cannot properly allege a false statement of material fact. It argues that "there is no requirement to allege a false statement of material fact." (Pl.'s Opp'n at 14.) Nothing could be further from the truth. *Board of Educ. of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989) (confirming that an essential element of a negligent misrepresentation claim is a false statement of material fact); *see also* 19A Ill. Law and Prac. Fraud § 35 ("a complaint must show that the defendant made a representation in regard to a material fact . . . [and] that such representation was false. . . ."). Plaintiff is clearly hesitant to address this element, because the "statement" it points to—"RJO stated it would accept trades[13]"—is not a statement of material fact, but simply a promise of an intent to do something in the future. As discussed in the Initial Brief (at 13), such statements cannot form the basis for a negligent misrepresentation claim. *Buzzard v. Bolger*, 453 N.E.2d 1129, 1131 (Ill. App. Ct. 1983) ("the material facts upon which misrepresentation cases rest must be a past or existing fact rather than an opinion or promise of future action."); *see also* 19A Ill. Law and Prac. Fraud § 35 ("the false representation alleged in the complaint must be one as to an existing or past fact, and not a mere promise to do some act in the future.").[14] Plaintiff's negligent misrepresentation claim should be dismissed.

---

[13] Pl.'s Opp'n at 14.

[14] The circular *dicta* in *Duhl v. Nash Realty, Inc.*, 429 N.E. 2d 1267, 1274 (Ill. App. Ct. 1981), does not change the well-established principle set forth in *Buzzard* and the Illinois Law &

### F. Plaintiff Fails to Allege a Lack of Consideration

Plaintiff does not allege a lack of consideration, and, thus, its promissory estoppel should fail. (Am. Compl. ¶¶ 95-104.) RJO noted in the Initial Brief (at 14-15) that, under Illinois law, "claims of promissory estoppel only succeed where all other elements of a contract exist but consideration is lacking." *Dargo v. Clear Channel Communications, Inc.*, No. 07 C 5026, 2008 WL 2225812, at *2 (N.D. Ill. May 28, 2008) (citing *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005)). In *Dargo*, this Court dismissed a plaintiff's promissory estoppel claim, finding that she "ple[d] herself out of court by alleging facts establishing consideration for her claimed agreement with [the defendant]." *Id.* Plaintiff's promissory estoppel claim should likewise be dismissed because it argues that it pled adequate consideration to support an oral agreement. (Pl.'s Opp'n at 6.) Plaintiff cannot have it both ways.

## II. CONCLUSION

For the foregoing reasons, RJO, pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully requests that the Court dismiss Plaintiff's Amended Complaint in its entirety for failure to state a claim upon which relief can be granted. RJO also respectfully asks that the Court deny Plaintiff's request to amend its pleadings again.

---

Practice treatise. ("a statement of matters in the future, if affirmed as a fact, may amount to a fraudulent misrepresentation if it amounts to an assertion of fact."). Plus, the statements in *Duhl* related to future value of real estate and did not involve any alleged non-performance of a promised future action. *Id.* at 1272. Also, in *Broadview Financial v. Entech Management. Service Corp.*, 859 F. Supp. 444, 453-54 (D. Colo. 1994), another case that Plaintiff relies upon, the plaintiff expressly excluded statements of future promises from its negligent misrepresentation claim. (*e.g.*, excluding statement that a defendant "would consummate [a reverse merger] as soon as [a potential merger candidate] was ready to close.").

Dated: August 26, 2008                                        Respectfully submitted,

                                                               R.J. O'BRIEN & ASSOCIATES, LLC

                                                               By:     /s/ Charles E. Harris, II
                                                                             One of its Attorneys

Vincent J. Connelly                                 Marshall E. Hanbury
Charles E. Harris, II                                 MAYER BROWN LLP
MAYER, BROWN LLP                         1909 K Street, N.W.
71 South Wacker Drive                        Washington, D.C. 20006-1101
Chicago, Illinois 60606-4666               202-263-3357
(312) 782-0600                                        202-263-5357 – Facsimile
(312) 701-7711 – Facsimile

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on August 26, 2008, **Defendant's Reply in Support of Its Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted** was served by electronic filing, upon the following counsel of record:

Edward H. Tricker
Bruce A. Smith
WOODS & AITKEN LLP
301 South 13th Street, Suite 500
Lincoln, Nebraska  68508
(402) 437-8530
(402) 437-8558 – Facsimile

Jeffrey Schulman
WOLIN & ROSEN, LTD.
55 West Monroe, 36th Floor
Chicago, Illinois 60603
(312) 458-1244
(312) 424-0660 – Facsimile

                                                      /s/ Charles E. Harris, II